UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD COLE,

    Plaintiff,                                         Civil Action No. 17-CV-12928

vs.                                                HON. BERNARD A. FRIEDMAN

MONROE COUNTY and
MONROE COUNTY SHERIFF DALE MALONE,

    Defendants.
_____/

VINCE BURKEY,
DALLAS ROD, and
GERALD JOHNSON,

    Plaintiffs,                                       Civil Action No. 18-CV-10410

vs.                                                 HON. BERNARD A. FRIEDMAN

MONROE COUNTY and
MONROE COUNTY SHERIFF DALE MALONE,

    Defendants.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        This matter is presently before the Court on defendants' motion for summary judgment [docket entry 34]. Plaintiffs have responded and defendants have replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

        Plaintiffs in these consolidated actions are four retired Monroe County sheriff's deputies. They wish to carry concealed firearms pursuant to the Law Enforcement Officers Safety Act ("LEOSA"), 18 U.S.C. § 926C. Subsection (a) of this statute permits "an individual who is a qualified retired law enforcement officer and who is carrying the identification required by

subsection (d)" to carry a concealed firearm. As defined in subsection (c),[1] a "qualified retired law

---

[1] Subsection (c) of the statute states:

> As used in this section, the term "qualified retired law enforcement officer" means an individual who--
>
> (1) separated from service in good standing from service with a public agency as a law enforcement officer;
>
> (2) before such separation, was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest or apprehension under section 807(b) of title 10, United States Code (article 7(b) of the Uniform Code of Military Justice);
>
> (3)(A) before such separation, served as a law enforcement officer for an aggregate of 10 years or more; or
>
> (B) separated from service with such agency, after completing any applicable probationary period of such service, due to a service-connected disability, as determined by such agency;
>
> (4) during the most recent 12-month period, has met, at the expense of the individual, the standards for qualification in firearms training for active law enforcement officers, as determined by the former agency of the individual, the State in which the individual resides or, if the State has not established such standards, either a law enforcement agency within the State in which the individual resides or the standards used by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State;
>
> (5)(A) has not been officially found by a qualified medical professional employed by the agency to be unqualified for reasons relating to mental health and as a result of this finding will not be issued the photographic identification as described in subsection (d)(1); or
>
> (B) has not entered into an agreement with the agency from which the individual is separating from service in which that individual acknowledges he or she is not qualified under this section for reasons

enforcement officer" must, among other things, have "separated from service in good standing" and "during the most recent 12-month period, ha[ve] met, at the expense of the individual, the standards for qualification in firearms training for active law enforcement officers" and not be medically unqualified for reasons of mental health. Section 926C(c)(1), (4), (5). As set forth in subsection (d),[2] the identification a qualified retired law enforcement officer must carry consists of

---

    relating to mental health and for those reasons will not receive or accept the photographic identification as described in subsection (d)(1);

    (6) is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance; and

    (7) is not prohibited by Federal law from receiving a firearm.

[2] Subsection (d) of the statute states:

    (d) The identification required by this subsection is--

    (1) a photographic identification issued by the agency from which the individual separated from service as a law enforcement officer that identifies the person as having been employed as a police officer or law enforcement officer and indicates that the individual has, not less recently than one year before the date the individual is carrying the concealed firearm, been tested or otherwise found by the agency to meet the active duty standards for qualification in firearms training as established by the agency to carry a firearm of the same type as the concealed firearm; or

    (2)(A) a photographic identification issued by the agency from which the individual separated from service as a law enforcement officer that identifies the person as having been employed as a police officer or law enforcement officer; and

    (B) a certification issued by the State in which the individual resides or by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State that indicates that the individual has, not less than 1 year before the date the individual is carrying the concealed firearm, been tested or

photographic identification issued by the employing agency indicating that the person is a former law enforcement officer. In addition, either this photographic identification or a separate certification (issued by the State or a certified firearms instructor) must indicate that the person has met active duty firearms standards within the past year.

In 17-12928, plaintiff Cole alleges that defendant Malone, who has been the Monroe County Sheriff since 2013, "refuses to issue the Plaintiff his retirement credentials including the photographic identification" and that this "deprive[s] Plaintiff of his right to carry concealed firearms under LEOSA." Compl. ¶¶ 29, 47. Plaintiff further alleges that in the last election he supported Malone's opponent, and that Malone's failure "to issue the Plaintiff his retirement credentials was in direct retaliation to the Plaintiff exercising his First Amendment Constitutional Rights." *Id.* ¶¶ 54, 57. In Count I, brought under LEOSA and 42 U.S.C. § 1983, Cole seeks an order requiring Malone to give plaintiff his "retirement credentials including a photographic identification." *Id.* at 9. In Count II, also brought under § 1983, Cole alleges that Malone retaliated against him in violation of his First Amendment rights. On this claim, he seeks the same relief as in Count I, plus damages.

In 18-10410, plaintiffs Burkey, Rod, and Johnson allege that in April or May 2017

---

> otherwise found by the State or a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State to have met--
>
> > (I) the active duty standards for qualification in firearms training, as established by the State, to carry a firearm of the same type as the concealed firearm; or
> >
> > (II) if the State has not established such standards, standards set by any law enforcement agency within that State to carry a firearm of the same type as the concealed firearm.

4

defendant Malone "decided to no longer allow the Plaintiffs to qualify at the range." Am. Compl. ¶ 1. These plaintiffs allege that "[w]hen Malone decided to not allow them to qualify on the range he violated the Plaintiffs['] rights to carry pursuant to LEOSA. You must qualify on the range in order to carry your weapon pursuant to LEOSA." *Id.* ¶ 26. Like Cole, these plaintiffs allege that Malone has taken this action in retaliation for their support of his challenger in the last election. *Id.* ¶ 31. In Count I, brought under LEOSA and § 1983, these plaintiffs seek an order requiring Malone "to allow the Plaintiffs access to the range in order to qualify using their weapon[s]." *Id.* at 9. In Count II, also brought under § 1983, they allege that Malone retaliated against them in violation of their First Amendment rights. On this claim, they seek the same relief as in Count I, plus damages.

*Cole's Count I - LEOSA Identification*

Cole's first claim – that defendants have violated his rights under LEOSA by declining to give him the photographic identification described in § 926C(d) – fails because the statute does not require them to do so. As the Supreme Court explained in *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (emphasis in original),

> [i]n order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*. *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 448–449, 107 L.Ed.2d 420 (1989). We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. *Wright*, 479 U.S., at 430, 107 S.Ct., at 773–774. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id.*, at 431–432, 107 S.Ct., at 774–775. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms. *Wilder, supra*, at 510–511, 110 S.Ct., at 2517–2518; see also *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531,

5

> 1539–1540, 67 L.Ed.2d 694 (1981) (discussing whether Congress created obligations giving rise to an implied cause of action).

The Supreme Court later emphasized that it "reject[ed] the notion that our cases permit anything short of *an unambiguously conferred right* to support a cause of action brought under § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (emphasis added).

The right LEOSA confers upon qualified retired law enforcement officers is to "carry a concealed firearm that has been shipped or transported in interstate or foreign commerce." Section 926C(a). To exercise this right a plaintiff must, in addition to meeting the criteria for being a qualified retired law enforcement officer, "carry[] the identification required by subsection (d)." Under subsection (d), the photographic identification is "issued by the agency from which the individual separated from service." Critically, however, no provision of the statute *requires* the agency to issue this identification. Cole has no right to this identification that is enforceable under § 1983 because LEOSA imposes no "binding obligation on the States" to provide it.

This precise issue arose recently in *Burban v. City of Neptune Beach, Fla.*, No. 3:17-CV-262-J-34JBT, 2018 WL 1493177 (M.D. Fla. Mar. 27, 2018). The plaintiff in that case was a qualified retired law enforcement officer who, like Cole, sued under § 1983 and "allege[d] that the City ha[d] deprived her of the right to carry a concealed firearm under LEOSA by failing to issue her an identification card." *Id.* at *4. The court dismissed the complaint because LEOSA creates no right to the identification card. The court explained:

> Notably, nothing in the text of LEOSA directs a state to issue the identification required by subsection (d). *Mpras*, 74 F. Supp. 3d at 270. To the contrary, LEOSA leaves in place a state's own standards for "deciding to whom subsection (d) identifications will be issued." *Henrichs*, 2018 WL 572708 at *4. As the *Mpras* court persuasively observed:

> > Subsection (d) contains numerous references to actions that must be performed and qualifications that must be determined "by the agency from which the individual retired" or "by the State in which the individual resides" or "by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within the State" or "by any law enforcement agency within that State."
>
> *Mpras*, 74 F. Supp. 3d at 270. "These repeated references to actions taken by the state suggest that Congress intended to leave the standards and procedures for issuing the required photographic identification required by subsection (d) to the states." *D'Aureli*, 2018 WL 704733 at *4. As such, the Court finds that LEOSA does not require the City's standards for issuing identification cards to mirror the standards set forth in the statute for being a qualified retired law enforcement officer. Accordingly, Burban's allegation that the City has deprived her of the federal right to carry a concealed firearm by setting the standards for acquiring an identification card higher than those enumerated in LEOSA is insufficient. Burban has failed to allege that she has been deprived of a federal right, and as a result she has failed to state a claim for relief under Section 1983. *See D'Aureli*, 2018 WL 704733, at **4-6 (dismissing a claim under Section 1983 because LEOSA does not confer the right to carry a concealed firearm upon those who lack identification cards); *Henrichs*, 2018 WL 572708 at **3-4 (same); *Mpras*, 74 F. Supp. 3d at 270 (same).

*Id.* at *8.

The court in *Burban* went on to note that other courts have likewise determined that LEOSA creates no enforceable right to the issuance of subsection (d) identification:

> Notably, outside the context of Section 1983 claims, several federal and state courts have determined that States are under no obligation to issue identification cards to "qualified retired law enforcement officers" in order to permit the officers to exercise their right to carry concealed firearms. For example, in *Moore v. Trent*, No. 09 C 1712, 2010 WL 5232727, at *4 (N.D. Ill. Dec. 16, 2010) and *Johnson v. N.Y.S. Dep't of Corr. Servs.*, 709 F. Supp. 2d 178 (N.D.N.Y. 2010), the courts addressed whether LEOSA creates a private cause of action for those who have been denied subsection (d) identification

7

cards. *Moore*, 2010 WL 5232727 at *2; *Johnson*, 709 F. Supp. 2d at 183. Ultimately, both courts determined that LEOSA does not create a private right of action because qualified retired law enforcement officers are not entitled to identification cards. *Moore*, 2010 WL 5232727 at **3-4; *Johnson*, 709 F. Supp. 2d at 185. The courts recognized that "the identification card required in § 926C(d) constitutes a reservoir of powers set aside for the States." *Moore*, 2010 WL 5232727 at *4; *see also Johnson*, 709 F. Supp. 2d at 185 ("Congress expressly left the authority to issue the identification described in subsection (d) in the hands of the relevant state agency.") (citing 18 U.S.C. § 926C(d)). . . .

Further, in *Foley v. Godinez*, 62 N.E. 3d 286 (Ill. App. 1st Dist. 2016), the Appellate Court of Illinois, First District, denied mandamus relief because the issuance of identification cards is an act of discretion. *Id*. at 294.

*Id.* at *8-9.

The Court acknowledges that in *DuBerry v. Dist. of Columbia*, 824 F.3d 1046 (D.C. Cir. 2016), the court of appeals concluded that LEOSA created a "concealed carry" right and that an otherwise qualified retired law enforcement officer may enforce this right by obtaining a court order under § 1983 compelling the jurisdiction from which he retired to issue the required firearms certification. For the reasons stated above, the Court respectfully disagrees with this conclusion.[3]

---

[3] Moreover, *DuBerry* is distinguishable factually from the present case because the plaintiffs in *DuBerry* received their photographic identification cards (but not their firearms certification) and the issuing agencies did not contend that plaintiffs were "unqualified for reasons relating to mental health." 824 F.3d at 1053-54. The *DuBerry* court noted that "a state may retain some discretion, for example to the extent it concludes that a retired law enforcement officer seeking to exercise a LEOSA concealed-carry right is currently either not physically or mentally capable of being in responsible possession of a firearm, *see* 18 U.S.C. § 926C(c)(5)." *Id.* at 1054. Therefore, "the issue of any discretion [the employing agency] may retain is not before this court." *Id.* Nor, apparently, was there any issue in *DuBerry* as to whether plaintiffs retired in good standing. *See id.* at 1050. By contrast, in the present case Malone testified that Cole did not retire in good standing and that he had no arrest powers during the last five years he was employed. Malone Dep. at 15-17. There is also evidence that Cole was not psychiatrically fit at the time he retired. *See* Zuniga Dep. at 5-6.

As the court noted in *Burban*, *DuBerry* stands alone in reaching this conclusion, while several district courts around the country agree that the statute created no enforceable right to the required identification. While LEOSA does require states to permit a qualified retired law enforcement officer who "is carrying the identification required by subsection (d)" to carry a concealed weapon, the fact remains that LEOSA simply does not "unambiguously impose a binding obligation on the States," as required by *Blessing*, 520 U.S. at 341, to issue the identification or the firearms certification. That is to say, if a state issues subsection (d) identification to a qualified retired law enforcement officer, that officer has the right to carry a concealed weapon in any state. But no state is required to issue subsection (d) identification.

For these reasons, the Court concludes that Cole has no enforceable right to subsection (d) identification, and that he therefore may not invoke § 1983 to compel defendants to issue him such identification. Accordingly, the Court shall grant summary judgment for defendants on Count I of Cole's complaint.

*Cole's Count II - First Amendment Retaliation*

In this count, Cole alleges that "[d]uring this last election cycle," i.e., the 2016 campaign, he "publicly endorsed [Malone's] challenger," and that after Malone won that election he "punish[ed] the Plaintiff" by not issuing him the photographic identification plaintiff requested. Compl. ¶¶ 32-34.

> The legal standards governing this claim have been articulated as follows:
>
> In order to establish retaliation for engaging in constitutionally protected activity, a plaintiff must prove the following elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the

9

> adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In brief, this analysis focuses on whether the adverse employment action was motivated in substantial part by the plaintiff's constitutionally protected activity. *See Mattox v. City of Forest Park*, 183 F.3d 515, 520–21 (6th Cir. 1999). If the plaintiff meets her burden, the burden then shifts to the defendants to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct. *See Kreuzer v. Brown*, 128 F.3d 359, 363 (6th Cir.1997), *cert. denied*, 523 U.S. 1121, 118 S.Ct. 1802, 140 L.Ed.2d 941 (1998); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

*Sowards v. Loudon Cty., Tenn.*, 203 F.3d 426, 431 (6th Cir. 2000).

For purposes of this motion, defendants concede that Cole engaged in protected activity and that an adverse action was taken against him. Defs.' Br. at 22. They argue, however, that Cole has not proven the third element, namely, that Malone denied Cole's request for photographic identification because he supported Malone's opponent in the 2016 election. Defendants note that Malone first denied Cole's request for this identification in 2013, long before the 2016 election. *See* Cole Dep. at 12; Malone Dep. at 11. Malone testified that Cole is the only retiree whose request for "retirement credentials" he has ever denied, and that he did so because Cole did not retire in good standing and did not have arrest powers for the last five years of his employment. Malone Dep. at 12, 15-17.

In response, Cole argues that defendants "are only quoting from the complaint filed by Cole" and that he testified that he also supported Malone's opponent in the 2012 election. Pls.' Resp. at 25. Defendants cannot be faulted for "quoting from the complaint," as it is the complaint, and not deposition testimony or anything else, that defines a plaintiff's claims. The complaint in the present case alleges retaliation only for Cole's support of Malone's opponent in "this last election

10

cycle." As the complaint was filed in September 2017, the "last election cycle" refers to the 2016 campaign, i.e., the months immediately preceding the election that took place in November 2016. This does not encompass any other campaigns or time frames. Whatever Cole may have done to support Malone's opponent in other elections is not alleged in his complaint and it is therefore not part of this case. Cole's support of Malone's opponent in the 2016 election cannot have caused Malone to deny Cole's request for identification in 2013.

Cole does allege that he repeated his request for "retirement credentials" in a letter to defendants in February 2017, and that defendants never responded to it. But this letter is not evidence of a causal connection between protected activity and adverse action. Malone testified that he denied Cole's request for retirement credentials when Cole first made this request in 2013 because "I didn't believe Mr. Cole retired in good standing so I was not going to issue him his card." Malone Dep. at 11. Cole has presented no evidence to suggest that Malone disregarded his 2017 letter for reasons any different from those that led him to deny Cole's 2013 request.[4] The mere fact

---

[4] Malone went on to explain at length why he concluded that Cole did not retire in good standing:

> In 1996, Mr. Cole was suspended in September and his police powers [were] taken away pending an investigation of illegal purchasing and selling of firearms and magazines. In 2000 - or 1997, Mr. Cole did not come in and get sworn in - or in 2001 he never got sworn in, so he had no police powers in the last five years that he was here. . . . [In] '97 or '98, they authorized charges against Mr. Cole. Those charges were dismissed. I believe the judge's words were: There may have been a crime here but I don't believe that there was any intent.
>
> \*   \*   \*
>
> I reviewed the investigation by the Monroe - or the Michigan Sheriff's association and I reviewed the . . . investigation by the ATF

11

that adverse action happened after protected activity is not evidence of a causal connection unless the two occur "extremely close" in time, *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010), and in this case the time between the two events was many months.[5] Even when the temporal proximity is close (which it plainly is not in the present case), a plaintiff must generally produce additional evidence to establish a causal connection. *See Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). In the present case, Cole has produced no such evidence.

On this record, there is simply no evidence of any causal link between Cole's support of Malone's opponent in the 2016 election and Malone's decision not to issue Cole his photographic identification. Cole has therefore failed to make out a prima facie case of First Amendment retaliation. Accordingly, the Court shall grant summary judgment for defendants on this claim.

***Burkey's, Rod's, and Johnson's Count I - LEOSA Firearms Certification***

These plaintiffs' first claim – that defendants have violated their rights under LEOSA

---

> agent. In those, Mr. Cole made contradictory statements, admitted to the improper purchasing and selling of firearms and the magazines that were illegal to sell to civilian employees.
> It became obvious to me that he was meeting with people outside of the state to try and cover up the fact that he was claiming they were reserve deputies at the time of purchase, and in their own statements they were not. He told them to backdate applications for the marine divisions in which at least one did. All that, along with the fact that he had no arrest powers, and he hadn't shot within the previous years is the reason why I made the determination he didn't retire in good standing.

Malone Dep. at 15-17.

[5] Cole made donations to Malone's opponent, David Uhl, in May and August 2016. *See* Pl.'s Ex. J.

by denying them "access to the range to qualify" – fails because the statute does not require defendants to grant such access. The analysis of this claim is similar to that of Cole's claim regarding defendants' refusal to give him photographic identification. As noted above, a plaintiff may use § 1983 to vindicate an "unambiguously conferred right," *Gonzaga Univ.*, 536 U.S. at 283, i.e., one arising from a statute that "unambiguously impose[s] a binding obligation on the States." *Blessing*, 520 U.S. at 341. But the only right that LEOSA confers upon qualified retired law enforcement officers is to "carry a concealed firearm that has been shipped or transported in interstate or foreign commerce." Section 926C(a). For the reasons explained above, and by the court in *Burban*, LEOSA does not grant plaintiffs the right to either the photographic identification or the firearms certification described in § 926C(d) because the statute imposes no binding obligation on any State or other entity to issue these credentials.

Further, LEOSA plainly states that the required firearms certification may be obtained either from the "agency from which the individual separated" or "by the State in which the individual resides or by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers with that State." Section 926C(d)(2)(B). The statute identifies three entities which *may* issue the certification; but the statute does not *require* that any of these entities do so. Therefore, plaintiffs have no right under the statute to demand that defendants provide them with the certification or, as they phrase it, "access to the range to qualify."[6]

---

[6] Interestingly, Rod testified that he was unaware he could obtain the LEOSA firearms certification from the State. Rod Dep. at 10. Johnson testified that he is aware of this option, but that "[i]t was quite complicated, because you had to pay for it, you had to go to Lansing, [and] you had to buy your own ammunition." Johnson Dep. at 16. The Court notes that LEOSA defines a qualified retired law enforcement officer as one who, among other things, "has met, *at the expense of the individual*, the standards for qualification in firearms training." Section 925C(c)(4). Burkey testified that he is aware he can qualify through the State but "I don't feel I

For these reasons, the Court concludes that Burkey, Rod, and Johnson have no enforceable right to subsection (d) firearms certification, and that they therefore may not invoke § 1983 to compel defendants to issue them such certification or to grant them access to the range. Accordingly, the Court shall grant summary judgment for defendants on Count I of these plaintiffs' complaint.

*Burkey's, Rod's, and Johnson's Count II - First Amendment Retaliation*

In this count, Burkey, Rod, and Johnson allege that they "publicly endorsed [Malone's] challenger" during the 2016 election, and that "[t]he failure of Defendant Malone to allow the Plaintiffs access to be able to qualify with their weapons pursuant to LEOSA was in direct retaliation against the Plaintiffs for exercising [their] First Amendment Constitutional Rights." Am. Compl. ¶¶ 30, 58.

As noted above, to succeed with this claim plaintiffs must show that they engaged in protected conduct, that adverse action was taken against them "that would deter a person of ordinary firmness from continuing to engage in that conduct," and that "the adverse action was motivated at least in part by the plaintiff[s'] protected conduct." *Sowards*, 203 F.3d at 431 (quoting *Thaddeus–X*, 175 F.3d at 394).

Rod's claim fails because he has not shown that he engaged in protected conduct. Rod testified that he believed Malone denied him access to the range because Malone "found out I had a sign for his opponent in the last election, and I feel that he thinks I voted for this man." Rod

---

have to." Burkey Dep. at 11, 25.

Dep. at 12. Yet Rod also testified that he did not put up the sign and that it "wasn't really on my property. It was on the right-of-way." *Id.* at 15. The fact that someone else erected a political sign near Rod's property, or that Rod believes Malone might have thought that the sign belonged to Rod, does not show that Rod engaged in protected activity. Defendants are entitled to summary judgment as to Rod's First Amendment retaliation claim on this basis alone.

For purposes of this motion, defendants appear to concede that Burkey and Johnson engaged in protected activity. Nonetheless, defendants argue persuasively that denying them access to the shooting range was not adverse action because it would not "deter a person of ordinary firmness from continuing to engage in that conduct." Burkey proved this point at his deposition. When asked whether he is deterred from speaking his mind, Burkey responded, "No, . . . there ain't nobody going to stop me from saying what I want to say." Burkey Dep. at 12. If a similar exchange occurred during Johnson's deposition, it is not attached to the motion papers. But as a matter of law, the Court holds that no qualified retired law enforcement officer would be deterred from supporting a candidate for sheriff by the current officeholder denying access to the local shooting range. As noted above, LEOSA allows the firearms certification to be obtained from the State or from a certified firearms instructor. Both Burkey and Johnson acknowledged that they can obtain the required certification from the Michigan State Police at the state capital, Lansing, where such shooting takes place every other month. *See* Johnson Dep. at 16, 42; Burkey Dep. at 25. In fact, Johnson testified that he did so in 2017. Johnson Dep. at 43. The main difference between qualifying in Monroe and qualifying in Lansing appears to be the inconvenience of the 100-mile drive. This is not a sufficiently significant burden to qualify as adverse action for a First Amendment retaliation claim. Moreover, plaintiffs may also obtain the required certification from

a certified firearms instructor, and Johnson testified to knowing of one in nearby Erie. Johnson Dep. at 42.

Defendants are entitled to summary judgment on Count II because plaintiffs have not stated a prima facie claim of First Amendment retaliation. Rod has not done so because he has not shown that he engaged in any protected activity. Burkey and Johnson have not done so because the denial of access to the local range did not constitute "adverse action" under the governing case law.

*Conclusion*

For the reasons stated above, the Court concludes that defendants are entitled to summary judgment on all of plaintiffs' claims in both 17-12928 and 18-10410. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment is granted.

|  |  |
|---|---|
| Dated: January 9, 2019<br>Detroit, Michigan | s/Bernard A. Friedman<br>BERNARD A. FRIEDMAN<br>SENIOR UNITED STATES DISTRICT JUDGE |

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 9, 2019.

                                                s/Johnetta M. Curry-Williams
                                                Case Manager